[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action, claiming a dissolution of marriage and other relief was brought to the Judicial District of New London at Norwich on April 22, 1999. The return date is May 4, 1999. The allegations of the complaint state that the plaintiff, whose maiden name was Denise A. Rutka, was married to the defendant, Kevin C. Bentley, on April 27, 1985. The plaintiff is a resident of the State of Connecticut and presently resides in Colchester with the minor children of the marriage. It is alleged that those children are Ian R. Bentley, born September 11, 1991, and Kyle R. Bentley, born May 23, 1993. It is further alleged that the marriage of CT Page 5741-ep the parties has broken down irretrievably.
Based on the testimony offered at trial, the court finds that it has jurisdiction based upon the residence of the plaintiff in the State of Connecticut and the court further finds that the allegations of the complaint have been proven.
FINDINGS OF FACTS:
The court makes the following findings: The plaintiff:, Denise Bentley was married when she was 24 years old. She is currently 40 years old. She is a high school and college graduate, however she does not work in the area in which she obtained her college degree which is travel and tourism. She is currently employed as an office manager for a chimney service and works approximately 32 hours a week. Prior to her present job, she had worked simultaneously at two part-time jobs.
Mrs. Bentley described herself as the primary caretaker of her two minor children. She described the personalities of each of the boys and further described the history of her marriage, which consisted of marrying Kevin Bentley whom she had known growing up in the Town of Colchester. Mr. Bentley was in the Marine Corps at the time the parties were first married. They were stationed in a number of assignments including New Orleans, San Diego, Georgia, Washington, DC, and Long Island, New York. Throughout the course of their marriage, Mr. Bentley drank. His drinking was a concern to Mrs. Bentley throughout. Mrs. Bentley describes her husband as having consumed alcohol on a daily basis, and to excess on weekends and holidays. At different times throughout the marriage there were discussions about his drinking. However, the pattern appears to have remained largely the same. Mrs. Bentley went to AlAnon during the time the parties were living in Georgia. She described her husband as having been angry and afraid that his superiors in the military would find out about his problem. At different times during the marriage, her state of mind was that of being emotionally upset, sad, distressed, angry and frustrated.
Mr. Bentley was arrested for driving while intoxicated several times. At one point when the parties lived in Georgia he entered a 30-day program but resumed drinking after his release. In 1996 Mr. Bentley was transferred to Long Island and the same issues continued to affect the marriage. In 1997, Mr. Bentley was arrested again for driving while intoxicated. At or near the same time he was hospitalized for diverticulitis and was given pain medication which Mrs. Bentley claims he abused. After the pain medication ran out, Mr. Bentley resumed alcohol CT Page 5741-eq abuse. He did return for a second surgery of his stomach and the cycle with the pain medication and the alcohol abuse was repeated.
While Mr. Bentley was stationed in Long Island, the parties purchased the property known as 195 South Main Street in Colchester. That property was purchased from Mr. Bentley's mother and had been his family homestead since 1968. After the property was purchased, Mrs. Bentley moved into the home with the children and Mr. Bentley resided there at different times. In approximately 1998 and subsequently, Mr. Bentley's health continued to decline. There were a number of incidents that took place during this time including one period in 1999 where Mr. Bentley received two drunk driving arrests within a three-week period. He was seeing a psychiatrist during this time, however it was Mrs. Bentley's opinion that he was not making progress toward resolving his substance abuse issues.
At present, Mrs. Bentley indicates that Mr. Bentley is being treated for depression and anxiety. She has concerns on occasion as to the sound in his voice when they speak over the phone and whether he is affected by the medication he is presently taking. In addition, and perhaps more importantly, she regards Mr. Bentley as manipulative, and she is not confident in his effort or commitment to his recovery. It is her feeling that he has not adequately taken responsibility for his own actions and essentially has a great deal of reservation about his ability to care for the children, which is directly related to the history of alcohol abuse that the parties share.
Mr. Kevin C. Bentley testified as to his age, which is 40, as to his rank in the military which is that of captain in the United States Marine Corps and as to his function which is that of being a public affairs officer. He testified that he entered the Marines in 1981. He acknowledged the fact that he is an alcoholic and has been so for a long time. Mr. Bentley recounted that he had been in rehabilitation on three separate occasions, most recently in May of 1999. He asserts that he has not drank since September of 1999.
Mr. Bentley indicates that he recognizes the impact of his alcoholism upon his marriage and his relationship with his children. He maintains that he has had some unsupervised contact since the time that he stopped drinking. He also says that his children are affectionate towards him and do not have any fear of him. For his part, he believes the marriage still has some prospect, but he recognizes that his wife disagrees.
Financially, the arrangement between the parties has been that Mrs. Bentley has been living in the Colchester home with the minor children. CT Page 5741-er Mr. Bentley has been paying the mortgage and for a period of time paid $1,000.00 a month to Mrs. Bentley for the expenses of the household. In December of 2000, the amount changed, somewhat unilaterally. For several months the husband continued to pay the mortgage and then $800.00 per month towards expenses of the household. On several occasions, funds were withdrawn by agreement from jointly held accounts which monies were used for the household expenses. There are no daycare expenses incurred at present, by reason of the fact that Mrs. Bentley's mother lives with her for substantial periods of time throughout the course of the year. Mrs. Bentley's current income is $406.00 per week gross and Mr. Bentley's is $1,390.00 per week gross. Mr. Bentley has indicated that he will be forced to retire upon his twentieth year in the service at his present rank. That will take place in October of this year. Upon retirement, he will receive a military pension of $2,000.00 per month.
The majority of the plaintiffs assets consist of the Colchester, Connecticut residence, and a residence jointly owned in Washington, DC. In addition, there is some cash value in insurance policies, a 401K plan held by Mrs. Bentley and the military pension as aforementioned.
ORDERS:
The court has considered the statutory criteria applicable to this matter.
It is found that the marriage of the parties has broken down irretrievably. Said marriage is hereby ordered dissolved. The court further orders the following:
The parties shall have joint custody of the minor children. The principal place of residence of the minor children shall be with the plaintiff mother. The defendant father shall have reasonable rights of access and visitation to the minor children including but not limited to alternating weekends from Friday at 5:00 p.m. until Sunday at 7:00 p.m., and one evening during the week by prior arrangement from 3:30 p.m. until 7:30 p.m. The parties shall share major holidays including Christmas Eve, Christmas Day, Easter, Memorial Day, Fourth of July, Labor Day, and Thanksgiving. During the children's summer vacation, the father shall enjoy three weeks with the minor children, two of which may be uninterrupted. Those dates shall be chosen on or before May 31st of each year.
The parties shall consult and confer with each other and share in making major decisions regarding the minor children's health, education, CT Page 5741-es welfare and upbringing with a view to arriving at harmonious policy calculated to promote the best interest of the children. In addition, the parties shall use their best efforts to adjust the visitation schedule, again, keeping in mind the best interest of the minor children. In the event of the illness or injury of one of the minor children, the party to learn of such injury or illness shall notify the other party immediately and shall take whatever steps are necessary in order to keep the other party informed of the child's well being. In addition, if either party is traveling with the children, they shall notify the other ahead of time and provide information as to an itinerary, with location and phone number where they plan to have the children.
The defendant shall supply to the plaintiff the names, addresses, and qualifications of any person or agency providing medical, mental health or substance abuse treatment for him on an annual basis. That information shall include, but is not limited, to the names of any family therapists, alcohol counselors, and confirmation of his attendance at AA meetings, that the defendant is currently participating in. The defendant shall also provide sufficient authorization as to the above so that the plaintiff may make reasonable inquiry as to the defendant's current state of physical health, mental health and sobriety and that they will not affect his ability to properly care for the children. That shall be done on an annual basis commencing May of 2001, and shall be a condition precedent to the defendant's exercising his visitation. The defendant shall not consume alcohol under any circumstance prior to or during the time of his visitation with the minor children. In addition, the defendant shall not be under the influence of any substance, prior to or during the time of his visitation with the minor children except prescription medication as prescribed pursuant to the order of a competent physician.
The defendant shall pay to the plaintiff unallocated alimony and support in the amount of $350.00 per week until the death of the plaintiff or April 30, 2008. This payment shall be taxable to the plaintiff and deductible by the defendant. Upon the termination of this term, the defendant shall pay child support in accordance with the child support guidelines. The defendant shall be responsible for 56% of all daycare expenses incurred by the plaintiff mother as may be mandated by her employment needs. An Immediate Wage Withholding order shall enter.
The defendant father shall be entitled to claim the tax deduction for the minor child Ian, the plaintiff mother shall be entitled to claim the tax deduction for the minor Kyle. CT Page 5741-et
The defendant shall maintain health insurance coverage, including dental insurance for the benefit of the minor children during their minority. Any other unreimbursed medical expenses or healthcare expenses of any kind shall be by the paid by the custodial parent paying the first $100.00 per year per child and then the defendant paying 56% and the plaintiff paying 44% of the remaining obligation, in accordance with the Child Support Guidelines. The plaintiff shall also carry the children as beneficiaries on any medical insurance which is made available to her at no cost or reasonable cost through her employment. Each party may avail himself/herself of the existing terms of their medical insurance policy of the other through the provisions of COBRA for the term allowed by law at their own expense.
The defendant shall convey to the plaintiff all his right, title and interest in the real property known as 195 South Main Street, Colchester, Connecticut. The plaintiff shall become responsible for the payment of any mortgage and all other obligations connected with said property and shall hold the defendant harmless on those obligations. The plaintiff shall quitclaim to the defendant all of her right, title and interest to that property known as 1725 Willard Street, Washington, DC. The defendant shall be responsible for all debts connected with said property and shall hold the plaintiff harmless thereon.
The defendant shall maintain and own his existing life insurance policies and list the plaintiff as beneficiary for so long as the children are in their minority, or so long as he has an obligation to pay any order under the terms of this judgment. The plaintiff shall maintain and own her existing life insurance policy in effect and list the defendant as beneficiary during the minority of the minor children. Each party shall be entitled to the present cash value of their existing policies.
The defendant shall convey to the plaintiff by way of a Qualified Domestic Relations Order one-third of the value of the defendant's military pension commencing at the time of his termination from military service. The plaintiff shall be entitled to any proportionate increase in the value of said pension based upon cost of living adjustment or similar increase. The plaintiff shall also own the entire TIAA/CREF plan currently in her name free of any claim by the defendant.
Each party shall keep their respective bank accounts, and the motor vehicle they are currently driving free from any claim of the other party. CT Page 5741-eu
As to the joint debt listed by the parties on their financial affidavits, the plaintiff shall be responsible for Sears, Chase Manhattan, and Washington Mutual. The defendant shall be liable for all other joint debts listed on the financial affidavits of the parties. Each of the parties shall be responsible for whatever individual debt is listed on their respected financial affidavit. Each of the parties shall be responsible for their own attorney's fees. The parties shall divide equally the anticipated Internal Revenue Service refund for the year 2000 tax return.
Robaina, J.